SHEEK v. SAIN.

(November 27, 1900.)

1. *Discovery, Production, and Inspection—Evidence—Inspection of Writings—The Code, sec. 1373—Slander.*

Where no answer has been filed, the defendant is not entitled to an order to inspect check in possessceion of plaintiff under The Code, sec. 1373.

2. *Discovery, Production, and Inspection—Evidence—Inspection of Writings—The Code, sec. 578—Slander.*

Under the Code, sec. 578, a person will not be ordered to allow an inspection of a paper-writing if the party making the request knows the contents thereof.

3. *Discovery, Production, and Inspection—Order to Produce Paper-writings Will be Granted, When—The Code, sec. 578.*

An order allowing others than the defendant to inspect a paper-writing in the possession of the plaintiff, under The Code, sec. 578, is erroneous.

4. *Pleadings—Time—Filing—Judge—Discretion—Slander.*

The trial Court can not extend the time to plead beyond the next term of Court, unless by consent of the parties.

5. *Appeal—Premature—Appealable Order—Inspection of Writings—Slander.*

An appeal lies from an order requiring a person to allow an inspection of paper-writings.

DOUGLAS, J., concurs.

CIVIL ACTION by J., L. Sheek against W. E. Sain, heard by Judge *O. H. Allen,* at Chambers, at Winston, May 16, 1899. From an order requiring plaintiff to allow defendant to inspect certain documents, the plaintiff appealed.

*Glenn & Manly*, and *E. L. Gaither*, for plaintiff.

*Watson, Buxton & Watson, T. B. Bailey*, and *Womack & Hayes*, for defendant.

FURCHES, J.   This is an action of slander, founded upon the statement contained in the following complaint, filed at Spring Term, 1900, of DAVIE Superior Court: "The plaintiff complains and alleges: (1) That on the 31st day of October, 1898, at and in the county of Davie, and State of North Carolina, and at divers other times and places, the defendant, Wiley E. Sain, with intent to injure the good name and character of plaintiff, wilfully, falsely, and maliciously spoke of and concerning the plaintiff, in the presence of, and hearing of, J. M. Call, and divers other good citizens of the State, in substance and tenor the following words, to-wit: 'Jim Sheek (meaning the plaintiff) forged my name to a check,' intending thereby to impute to the plaintiff the crime of forgery.   (2) That the said charge and imputation was untrue.   (3) That on the —— day of October, 1898, at, and in the county of Davie, and the State of North Carolina, and at divers other times and places, the defendant, Wiley E. Sain, with intent to injure the good name and character  of plaintiff, wilfully, falsely, and maliciously spoke of and concerning the plaintiff, in the presence of J. M. Call, and divers other good citizens of the State, in substance and tenor, the following words, viz., 'Jim Sheek (meaning the plaintiff) forged a check.'   'Who would vote for Jim Sheek—any man that would forge a check?' That he (meaning plaintiff) had forged one on him (meaning defendant). No man ought to vote for him, (meaning the plaintiff, who was then a candidate for sheriff), intending thereby to charge that plaintiff had forged a bank check on the defendant, and to impute to this plaintiff the crime of forgery.   (4) That

said charge and imputation was untrue. (5) That on the ——— day of October, 1898, at and in the county of Davie, and State of North Carolina, and at divers other times and places, the defendant, Wiley E. Sain, with intent to injure the good name and character of plaintiff, wilfully and falsely and maliciously spoke of and concerning the plaintiff, in the presence and hearing of William McDaniel, and divers other good citizens of the State, in substance and tenor the following words, to-wit: 'Jim Sheek (meaning plaintiff) has forged a check on me for ten dollars, on one of the Winston banks,' intending thereby to impute to plaintiff the crime of forgery. (6) That the said charge and imputation was untrue. (7) That by reason of the said charges the plaintiff sustained damage to the amount of five thousand dollars. Therefore, plaintiff demands judgment against the defendant in the sum of five thousand dollars, and for costs." And at said term of court the defendant filed the following affidavit: "Wiley E. Sain, being duly sworn, says that he is informed and believes that the surety on plaintiff's prosecution bond is insolvent. (2) Affiant further states that the plaintiff charges defendant with having uttered words concerning him to the effect that he (the plaintiff) had forged the name of affiant on the back of a certain bank check. (3) That the plaintiff has in his possession the bank check, of which defendant spoke the words he did use of and concerning the plaintiff; that affiant has seen the check in the hands of plaintiff, and has seen the name of Wiley Sain indorsed thereon; that it is not the signature of affiant, was never written by him, nor did he ever have such a check in his possession, nor did he ever authorize any one to sign his name thereon. (4) That it is important to this defendant to have said check, or pretended check, in the custody of this Court, subject to the inspection

of the parties to this action and their witnesses. (5) That it is necessary for this defendant to have access to said check, in order to understandingly and intelligently answer the complaint filed herein. That plaintiff some years ago owed affiant for leaf tobacco bought of him. That a controversy arose as to whether affiant had been paid $10 by reason of a check on the bank, plaintiff affirming and defendant denying, the existence of such a check. That afterwards plaintiff showed this affiant a paper, purporting to be a check, with affiant's name indorsed on the same, which affiant at the time denied, and threatened to bring suit against plaintiff. That, under this threat of suit, plaintiff paid defendant the amount of the check. Whereupon, the defendant prays that the said check may be impounded and placed in the custody of the Clerk of the Court for safe-keeping and for inspection by the parties to this action, their attorneys, and witnesses, as often as may be necessary." Signed by W. E. Sain, and sworn to before the Clerk of the Court April 12, 1899. And upon reading the defendant's affidavit, and after argument of counsel, the Court made the following order, to which the plaintiff excepted, and appealed: "The defendant herein, having moved the Court to impound a certain check described in the affidavit of defendant, and for permission to himself, his counsel, and witnesses, to inspect the same, and the motion having been by counsel postponed, to be heard by the Court during Forsyth Court, and now, on reading the affidavit and argument of counsel, it is ordered by the Court that the defendant, his attorneys, and such witnesses as he may designate, have inspection of said check, and the indorsements thereon, in the office of the Clerk of Davie Superior Court, upon notice of ten days to plaintiff to produce the same for such inspection, to be in the presence of plaintiff and his counsel, if they see proper

to be present, and time to file answer is extended until after such inspection."

The.power of the Court, if it had the power, to make this order is statutory; and the defendant relies on secs. 578, 1373, Code, as authority for making the order. But it will be seen that it can not be sustained by section 1373, as that section is to produce "evidence pertinent to the issue;" and if the rule is upon the plaintiff, and he does not produce the evidence, or give a satisfactory reason for not doing so, the defendant may have judgment as of non-suit. And if it be the defendant who is ordered to produce such evidence, and he does not do so, or give a satisfactory reason therefor, the plaintiff may have judgment by default. In this case there had been no answer filed and issue made. The validity of the order, therefore, depends upon section 578, which provides that "the court before which an action is pending, or the judge thereof, may, in his discretion, and upon due notice, order either party to give to the other, within a specified time, an inspection and copy, or permission to take a copy," etc. While the action was not at issue, no answer having been filed, it was an action pending, as the defendant had been summoned to appear, the case had been put upon the summons docket, and the plaintiff had filed his complaint, and we think section 578 applies to this case.

The object of this statute, we must suppose, was to enable a party to get information that he did not have, or to give him more definite information, or data, than he already had. And, upon a careful reading of the defendant's affidavit, we are unable to see that an exhibition of the check, or a copy of the same, would give him any information he did not already have, or that a copy would furnish him more, or more definite, information than he already had. The defendant says in his affidavit that "affiant further

states that the plaintiff charges defendant with having uttered words concerning him, to the effect that he (plaintiff) had forged the name of affiant on the back of a certain bank check;" "that the plaintiff has in his possession the bank check of which the defendant spoke the words he did use of and concerning the plaintiff; that affiant has seen the check in the hands of plaintiff, and has seen the name of Wiley Sain indorsed thereon; that it is not the signature of affiant, was never written by him, nor did he ever have such a check in his possession, nor did he ever authorize any one to write his name thereon." What more information could an exhibition of the check give the defendant? He had seen the check, had seen the indorsement thereon, and knew that it was not his signature. An exhibition could not have given him more information than he already has, according to his own affidavit. The only thing he seems not to know, is as to whether he spoke and uttered the words of and concerning the plaintiff, that plaintiff charges him with speaking, and the exhibition of the check could give him no information as to that.

But, although it appears to us from defendant's affidavit that such exhibition could have done him no good, still we would have sustained the ruling of the Court upon the ground that the statute gives the Judge discretion to make an order requiring the plaintiff to exhibit the check to the defendant, and to give him, or to allow him to take, a copy of the same, if the order had done no more than this. But the order does much more than this. It puts it within the power of defendant to stay the plaintiff's action as long as he pleases. It is well settled that the Court has the right to give further time to parties to plead. But this extension of time is within certain limits, and can not extend beyond the next term of Court, unless by the consent of the parties.

To attempt to give further time than this would be to trench upon the prerogative of the Judge succeeding him. But this order does more than that. It puts it in the hands of the defendant to determine when he will answer. He is to give the notice to the plaintiff whenever he wants the plaintiff to exhibit the check, and he is not required to answer until after this. Suppose the defendant does not choose to give this notice, he is not compelled to answer, and the case stands still. He has the "game in his own hands."

But, to our minds, there is another serious objection to this order, which is as follows: "It is ordered by the Court that the defendant, his attorneys,, and such witnesses as he may designate, have inspection of said check, and the indorsements thereon, in the office of the Clerk of Davie Superior Court, upon notice of ten days to plaintiff to produce the same for such inspection, to be in the presence of plaintiff and his counsel, if they see proper to be present, and time to file answer is extended until after such inspection." This order very much exceeds the power given in the statute. The power being statutory, the order can only be sustained by the statute, or it must fall. The statute is as follows: "The court before which an action is pending, or a judge thereof, may, in their discretion, and upon due notice, order either party to give to the other, within a specified time, an inspection and copy, or permission to take a copy of any books, papers, and documents in his possession, or under his control containing evidence relating to the merits of the action, or the defense therein." It is seen that the statute only authorized the Judge to order the plaintiff to exhibit the check to the defendant, and to require him to give the defendant a copy, or permit him to take a copy of the same, within a specified time. This is the extent of the power contained in the statute, and it would seem that this is suf-

ficient to serve all the purposes intended to be effected by the statute. We do not think it was intended by the statute to institute an investigation of the controversy between the parties—a kind of inferior court and petty trial—with witnesses and lawyers on both sides, without anyone being present with authority to keep order, or to command the peace.

It was contended on the argument that the appeal was premature; but we think not. *Commissioners v. Lemly,* 85 N. C., 341; *Justice v. Bank,* 83 N. C., 8. For the reasons given, we must hold that the order appealed from was erroneous.

Error.

DOUGLAS, J. (concurring). In concurring in the opinion of the Court, I deem it proper to state that I do not understand the Court as holding that the discretion of the Judge below is in all cases irreviewable, even when within the letter of the statute. The discretion confided to the Judge is a legal discretion, which must be exercised in subordination to other essential principles of law. *Marsh v. Griffin,* 123 N. C., 660. For instance, suppose that in the case at bar the plaintiff had declined to produce the check for inspection, even by the defendant himself, upon the ground that it would tend to convict him of the crime of forgery; I have no idea that any court either would, or could, enforce its production. Even if within the letter of the statute, such a course would be against its essential spirit, and in direct violation of section 11 of Art. I of the Constitution of the State.